# Pioneer Savings & Loan Co. v. Thompson.

*Action for Money had and received.*

1. *Husband and wife; wife can not reclaim money paid by husband with her consent.*—A married woman can not reclaim moneys constituting her separate estate, which, in the ordinary course of business, her husband, acting for her and with her consent, paid out or invested, even though the transactions were not manifested in writing, nor the assent or concurrence of the husband was expressed in writing; since the statute (Code of 1886, § 2348), authorizing disposition of the personal property of the wife by the husband and wife, by parol or otherwise, does not require the actual presence and express consent of both of them át the time and place of the transaction, but under its provisions the disposition made by one in pursuance with the authority conferred by the other is valid.

2. *Same; same; case at bar.*—Where stock in a building and loan association is purchased by the husband with his wife's money, and she, who was not present at the time of the payment of the money, subsequently assents to the purchase, there is a concurrence by the husband and wife in the disposition of the money, within the meaning of the statute (Code of 1886, §2348); and she can not, after the transaction is executed, repudiate the transaction and recover the money so paid from the association.

APPEAL from the City Court of BIRMINGHAM.

Tried before the Hon. W. W. WILKERSON.

This suit was brought on April 27th, 1895, by the appellee, Cora A. Thompson, against the appellant, the Pioneer Savings & Loan Company, a corporation which formerly did business under the name and style of the National Building, Loan & Protective Union.

The complaint contained three counts, all suing for money had and received.

On July 11th, 1890, J. D. Thompson, the husband of the plaintiff, acting for and in the name of the plaintiff, applied through the agent of the defendant for 88 shares of stock in said company, and paid him a membership fee of $176, for which the agent gave a receipt. This application for the shares of stock was made as a preparatory step towards the negotiation of a loan, for the

purpose of making improvements upon property which was owned by the plaintiff. The application for the stock was accepted on July 23d, and a certificate issued to the plaintiff was mailed to J. D. Thompson, as directed.

On August 11th, the plaintiff, over her own signature, (the husband forwarding the application), made application to the defendant for a loan upon her real estate; but for some irregularity the loan was not made, and the abstract of title which had been furnished was returned to the husband of the plaintiff. This suit was brought by the plaintiff to recover back the $176 paid as a membership fee. The other facts of the care are sufficiently stated in the opinion.

The cause was tried by the court without the intervention of a jury; and upon the hearing of all the evidence, the court rendered judgment for the plaintiff. The defendant appeals, and assigns as error the rendition of judgment for the plaintiff.

CABANISS & WEAKLEY, for appellant.—By section 2348, the personal property of the wife may be sold, exchanged or otherwise conveyed or disposed of by the husband and wife by parol or otherwise. Here no writing is required from either, their mutual assent being sufficient. As was said by HEAD, J., in *Steiner v. Tranum*, 98 Ala. 315, "Manifestly all that is required by this statute is the assent of both husband and wife to the sale or exchange; and it is not essential that such assent be manifested by any writing, or other particular mode."

In this State the common law right of a married woman to abrogate purchases of property (which, however, could only be exercised after she became discovert) has been abrogated.—*McAnally v. Heflin*, 105 Ala. 525. Mrs. Thompson had the right to invest her money in stock and it became her separate property. This she could do without the husband's consent. There is no law requiring the transaction to be evidenced by any writing signed by herself and husband. As we understand the law, the statute relating to alienation of personal property refers not to money which may be invested, not sold or exchanged, but to specific personal property other than cash. In the case of money, the wife, under our present constitution, can invest it even

in land without the participation or consent of the husband.—*McAnally v. Heflin*, 105 Ala. 525; *Marks v. Cowles*, 53 Ala. 499.

VON L. THOMPSON, *contra.*—There was no contract offered in evidence that was in writing, with the assent or concurrence of the husband expressed in writing, purporting to be that of the plaintiff with the defendant or with J. D. Thompson. A married woman can contract only in writing. There are two exceptions to this rule, but neither are applicable to the case at bar.—*Strauss v. Glass*, 108 Ala. 546; *Strauss v. Schwab*, 104 Ala. 669; *Scott v. Cotten*, 91 Ala. 623; *Clement v. Draper*, 108 Ala. 211; *Duncan v. Freeman*, 109 Ala. 185.

BRICKELL, C. J.—The controlling question of the case is, whether a married woman may reclaim moneys, her separate property or estate, which in the ordinary course of business, her husband acting for her and with her consent, may have paid out or invested; the transaction not having been manifested in writing, nor the assent or concurrence of the husband therein expressed in writing. The general construction of the statute, (Code of 1886, § 2346), relating to the capacity of a married woman to enter into contracts, has been, that full power or capacity to contract is not thereby conferred. Contracts binding, or intended to bind her personally, must be manifested in writing, and the assent or concurrence of the husband therein must be expressed in writing. These things must concur and co-exist—a contract of the wife in writing, and the assent or concurrence of the husband expressed in writing—neither can rest in parol; and if there be not the concurrence and co-existence of these things, the contract is, as to the wife, without legal obligation or validity, incapable of enforcement against her.—*Scott v. Cotten*, 91 Ala. 623; *Clement v. Draper*, 108 Ala. 211; *Strauss v. Glass*, *Ib.* 546.

While this is true of all contracts falling within the influence of the statute, (Code of 1886, § 2346)—of all executory contracts intended to bind the wife personally—dispositions of her personal property are not controlled by this statute. They are governed by the subsequent section, 2348 of the Code, which provides that "the

personal property of the wife, or any part thereof, may be sold, exchanged, or otherwise conveyed or disposed of by the husband and wife, by parol or otherwise." Whether this section, even, has any application to expenditures or investments of her moneys, by herself or her husband, for her and by her authority, we do not deem it necessary to decide in this case, and the question will be regarded as pretermitted. We reach the conclusion, upon the evidence, that the money in question was disposed of by both husband and wife, and will treat the case as if governed by said section. The power of disposition the statute confers, is as broad and comprehensive as the nature of the subject will admit—the only limitation upon its exercise is the union therein of the wife and husband. In construction of it, it was said by HEAD, J., in *Steiner v. Tranum*, 98 Ala. 319: "Manifestly, all that is required by this statute is the assent of both husband and wife to the sale or exchange; and it is not essential that such assent be manifested by any writing or other particular mode. A fair construction of the statute does not require that both shall be actually present and express their assent at the time and place the sale or exchange is made. If one authorizes the other to make the contract, and it is done in pursuance of that authority, there is the necessary assent of both."

The undisputed facts are, that the husband of the appellee, in her name, applied to the appellant, then doing business as the National Building, Loan & Protective Union, for eighty-eight shares of its stock of a certain series, accompanying the application with the money to pay the fee for membership, the money now sought to be reclaimed. The agent of the appellant to whom the application was made, gave the husband a receipt expressing that the money was received of the appellee. This paper contained this stipulation: "In case said application should be approved and accepted by said Union, a certificate of shares shall be delivered to said applicant, when issued. In case the application is declined by the Union, the above named amount shall be returned to said applicant by the agent;" and in the application for shares made contemporaneously with the payment of the money and the taking of the receipt, it is stated, "this application and its acceptance by the

Union constitutes the contract." The application was not declined; it was approved and accepted, and the certificate of stock duly mailed to the husband, and that it was received by him, is a fact we are of opinion, for reasons presently stated, not matter of reasonable controversy.

The appellee may not have been informed of the application for membership in the Union, and of the use of the money, originally, and not being then informed, had not the opportunity to assent or dissent from the transaction. But she was subsequently informed of it and assented to it. We say assented to it, but we do not intend that the assent was expressed in words; it was yielded by her conduct, the equivalent of a formal assent expressed in the most positive, direct language. Her testimony is: "I returned from southwest Georgia in August or September, 1890." (The receipt was given July 11th, 1890). "Very soon after my return, (in a few days), I ascertained from my husband that he had sent or paid the money for which this suit is brought. I knew nothing of it until then. I did not tell him that I objected to his having done so, or complain of his doing so, or tell him he should not have done it. I was not in the habit of talking to, or treating my husband that way. I knew, furthermore, at that time, that he was corresponding with the defendant, trying to get the money back. I never wrote them any letter, or made any claim upon them myself." The testimony of the husband is, that he wrote the appellee while she was in Georgia, that he had taken the stock, in order to borrow money; and after her return informed her of the use of the money, and she made no objection. *Qui tacet consentire videtur*; the appellee was silent when the transaction was of recent occurrence, and the silence implies consent—it was not necessary her consent should attend the original transaction, nor that at the same time she and her husband should have joined in the transaction.—*Steiner v. Tranum*, 98 Ala. 319, *supra*. That the certificate of stock was duly mailed to the husband, is a fact about which the evidence is free from conflict. Whether he received it, he does not now remember, and will not say positively that he did not, but he had a pass book from the company, showing the certificate number of the stock. The presumtion of law is,

that a letter, postage prepaid, mailed to one at the place of his residence, or at the place he usually receives his letters, was received by him. This presumption, however, is rebuttable by proof.—*Steiner v. Ellis*, 7 So. Rep. 803 ; *O'Connor Min. & Mfg. Co. v. Dickson*, 112 Ala. 304 ; *DeJarnette v. McDaniel*, 93 Ala. 215 ; 1 Green. Ev., § 40. That the letter enclosing the certificate of stock was received by the husband, is a fact not matter of fair controversy—no jury would be warranted in finding to the contrary, though the husband did not remember whether he received it or not, and thought, or was inclined to think, he had not received it. The pass book designating the number of the stock was received, and aside from the improbability that it would have been sent without the certificate, in all the correspondence requesting a return of the money paid for the certificate, there was no denial of its receipt—no complaint that it had not been forwarded, that in this particular, the appellant had been derelict.

The substance of the contract on which the money was paid has been recited. The only duty or obligation resting on the appellant, was the acceptance or rejection of the application for the stock. If the application was rejected, the agent receiving the money for the fee for membership was bound to refund it ; and it may be, that the appellant would have been answerable for his performance of the duty. If the application was accepted, and of the fact of acceptance there is no dispute, the only duty resting upon the appellant was the issue and delivery of the certificate of stock, a duty which was performed. The whole transaction is executed ; it involves no more than a disposition of the money of the wife, and in the disposition there was concurrence of the husband and wife. Fraud not being imputed or imputable, the transaction cannot be undone, however disappointing or injudicious it may have proved.

The result is, the judgment of the city court must be reversed, and a judgment rendered that the defendant go hence, and recover of the plaintiff the costs expended in the city court, and the costs of appeal in this court and in the city court.

Reversed and rendered.